THOMAS A. SHERWOOD, Appellant, v. WILLIAM G. NEAL AND H. C. Fox, Respondents.

**St. Louis Court of Appeals, May 13, 1890.**

1. **Guardian and Ward:** RIGHTS OF NATURAL GUARDIAN. A father, as natural guardian of his child, has no control whatever over the property of such child which is not derived from him, unless he has qualified by giving bond in accordance with the statute ; hence, until he thus qualifies, he has no right to sue for such property.

2. **Estoppel:** BAILOR AND BAILEE. When one receives as bailee property from another, and, on his refusal to return the property to the bailor, the latter sues him for the property, he is estopped in such suit from denying his bailor's title.

3. **Bailment:** AGISTMENT : LIEN. One who feeds and takes care of a horse under a contract with another who is merely a bailee of the horse, and whom he knows to be in charge of the animal as bailee, is bound to know the extent of the authority of such bailee, and has no lien as against the bailor for the feed so furnished, or for his services, if such bailee had no authority under the terms of the bailment to contract therefor.

*Appeal from the Greene Circuit Court.*—HON. W. D. HUBBARD, Judge.

REVERSED AND REMANDED.

*Adiel Sherwood,* for appellant.

(1) No objection being made to plaintiff's legal capacity to sue, or on the score of defects of parties plaintiff, either by demurrer or by answer, any such objections, if existing, cannot be reached by the declarations of law, and were waived. R. S. 1879, secs. 3515, 3519 ; *Horstette v. Menier,* 50 Mo. 158 ; *Reugger v. Lindenberger,* 53 Mo. 366 ; *Dunn v. Railroad,* 68 Mo. 279 ; *State v. Sappington,* 68 Mo. 457 ; *Rogers v.*

*March*, 73 Mo. 70 ; *Mill Co. v. Church*, 54 Mo. 524 ; *Rickey v. Tenbroeck*, 63 Mo. 570 ; *Kellogg v. Malin*, 62 Mo. 429 ; *May v. Burk*, 80 Mo. 679 ; *State v. Benning*, 74 Mo. 99 ; *Clowen v. Railroad*, 21 Mo. App. 216 ; *Paxon v. Pierce*, 25 Mo. App. 62. ( 2 ) But it was perfectly competent for plaintiff to bring this suit in his own name ; he had a special property in the horse, in so much that if the horse had been stolen from his possession, the thief could have been prosecuted on the basis of ownership in the plaintiff. Besides the plaintiff, being entitled to the possession of the horse as natural guardian of his minor child, was authorized, by reason of such possession, to maintain replevin for the same. *Smith v. Williamson*, 1 H. & J. 147 ; *Newman v. Bennett*, 23 Ill. 427 ; Wells on Replevin, sec. 643. (3) And defendant Neal, having obtained possession of the horse under the contract, became thereby the bailee of the plaintiff, sustaining toward him a relation analogous to that of tenant towards landlord and consequently, in the absence of a paramount title asserted against him, estopped to deny the title of plaintiff to the property ; estopped to deny the right of the plaintiff to maintain his possessory action for the same, and estopped to set up the *jus tertii* against plaintiff. Bigelow Estop. [3 Ed.] 430, and cas. cit.; *Wear v. Sawyer*, 91 Mo., *loc. cit.* 355 ; *Pulliam v. Burlingame*, 81 Mo. 111 ; Stephen's Dig. Ev., art. 105. ( 4 ) The contract entered into between plaintiff and Neal, for the keeping and training of the horse, was a matter of personal trust and confidence in Neal ; and the maxim applies, *delegata non potest*, etc. Section 3196, Revised Statutes, 1879, therefore, does not apply to a case of this sort ; it only applies where the lien originates in right and not in wrong—at least known wrong. Fox knew that Neal had possession of the horse from plaintiff, and was aware of the contract between plaintiff and Neal. He will be presumed to have had notice of the contents of the contract under

which Neal held.   Gross negligence in failing to make proper inquiry is notice and tantamount to knowledge. *Leavitt v. LaFonce*, 71 Mo. *loc. cit.* 356 ; *Hageman v. Sutton*, 91 Mo. 533. . ( 5 )   It was proper to bring in all parties in interest and have their rights adjusted and adjudged in this action of replevin.   *Lewis v. Mason*, 94 Mo. 557, and cas. cit.   But, if there had been any misjoinder of parties defendant, then the remarks under the first point apply.   .

*B. U. Massey* and *Ethelbert Ward*, for respondents.

( 1 )   Plaintiff Sherwood has no right to the possession of said horse.   R. S. 1879, sec. 2560 ; 2 Kent's Com. 220–221 ; *Fonda v. Van Horne*, 15 Wend. ( N. Y.) 631 ; *Perry v. Carmichael*, 95 Ill. 519 ; *Duncan v. Crook*, 49 Mo. 116.   Plaintiff Sherwood did not bring suit as natural guardian of his child.   The replevin suit was brought in the name of Sherwood individually.   Neal did not dispute the title of his bailor, the natural guardian of Pansy Sherwood, but, in his general denial, disputed the title of Sherwood, the plaintiff, individually. This is no estoppel as claimed by appellant.   ( 2 )   There was failure of proof that plaintiff Sherwood was entitled to the possession of said horse.   This did not appear in the pleading and could not be taken advantage of by either demurrer or answer.   It is proper in such cases for the court, sitting as a jury, to determine the case by instructions.   Such an instruction is of the nature of a demurrer to the evidence.   R. S. 1879, sec. 3702 ; Greene-Meyer Mo. Plead., secs. 1056–1068.   ( 3 )   Fox has a special lien as a keeper and boarder of the horse. R. S. 1879, secs. 3196, 3197.   Should the appellate court hold that the form of the entry of the judgment is erroneous, it will direct the entry of the proper judgment in the lower court.   *Puller v. Thomas*, 36 Mo. App. 105.

BIGGS, J.—Plaintiff seeks to recover from the defendant Neal the possession of a stallion. There was an order of delivery, and the horse was taken from Neal and delivered to the plaintiff. The amended petition contains two counts. The first is in the usual form of suits in replevin, and the other sets forth that, on the fourth day of April, 1886, the plaintiff delivered to Neal the possession of the horse, under a written contract. The contract referred to was filed with the petition, and it was in substance as follows : Plaintiff agreed to deliver possession of the horse to Neal, and Neal was to have the care and custody of the animal for two years, provided he complied with the conditions of the contract, which were to the effect that Neal should thoroughly train the horse to trot and bear all expenses for feeding, sheltering and otherwise caring for the animal during the time. As compensation, Neal was to receive one-half of the earnings of the stallion during the two years, and the other half he agreed to pay to plaintiff's agent, Dr. E. T. Robberson, payments to be made at regular periods, to be determined and fixed by Robberson. It was also agreed, in consideration of the services to be performed by Neal, that the title to one-half of the stallion was to be vested in Dr. Robberson, as trustee, and, at the expiration of the two years, the animal was to be sold and one-half of the proceeds was to go to Robberson for Neal. But it was distinctly stipulated that the title to the horse should not vest in Neal, but that one-half interest was to remain in plaintiff, and that the other half was to vest in Robberson as trustee, subject to be divested upon a failure by Neal to carry out his part of the contract. It was also expressly agreed that, if Neal failed in any manner to fully and fairly comply with the conditions of his contract, he was to forfeit all rights thereunder. Plaintiff then averred that he delivered the horse to Neal under the contract, and that the latter had in every particular failed to comply with its conditions,

*i. e.*, he had failed to train the horse, and, in fact he was entirely incompetent to properly perform such duties; that the stallion had earned over five hundred dollars, and that Neal had failed to pay Dr. Robberson any part thereof, although the time for such payments had been fixed by Robberson as required by the contract, of which Neal had due notice. Plaintiff asked judgment against Neal for the amount of the earnings of the horse.

After the suit had been instituted, the defendant Fox was made a party because he claimed a lien on the horse for feed furnished, and also for his services in training him.

Neal's answer tendered the general issue, and that of Fox contained *only* the statement of a counter-claim. It alleged that Fox was the keeper and trainer of horses; that in November, 1887, the stallion had been entrusted to his care by Neal; that, under a contract with Neal, he boarded and trained the horse, and that there was due him therefor the sum of seventy dollars and fifty cents. Judgment was then asked for that amount, and that it be enforced as a special lien against the horse. To this answer the plaintiff filed a replication. The parties went to trial on the issues thus framed, and the judgment of the court was that the plaintiff either return the horse to Fox, or pay him the sum of five hundred dollars (the value of the horse). From this judgment the plaintiff has appealed.

The plaintiff read in evidence the contract signed by him and Neal. He then introduced evidence tending to show that, at the time the contract was made, he (the plaintiff) was in possession of the horse; that Neal received the animal from him under and by virtue of the contract; that, when the suit was begun, the horse was still held by Neal under the contract and in no other way; and that Neal had failed to comply with the conditions of the contract in the manner stated in

the petition. It was disclosed by the evidence that the horse belonged to the plaintiff's minor child; that it was a gift to the child from a friend of the family, and that the plaintiff held possession of it as the natural guardian of the child, but had failed to give bond as such guardian, as required by law. The defendant Fox introduced evidence tending to prove the averments of his answer, and that the charges made by him were reasonable and customary. The plaintiff objected to all testimony in support of Fox's counter-claim, because the defendant Neal was clothed with a personal trust in respect of the care and training of the horse, which he could not delegate to another; that the evidence tended to show that Fox was aware of Neal's contract, and that, if he rendered the alleged service under a contract with Neal, he did so with the knowledge that Neal had no right to bind the plaintiff by any such agreement. The defendant Neal introduced no testimony.

The following instructions indicate the theories of the plaintiff and defendants respectively. The defendants asked, and the court gave, the following instruction: "That if the evidence in this cause shows that 'Shield' was, at the time of the institution of this suit, the property of Pansy Sherwood, a minor under the age of eighteen years, and that Thomas A. Sherwood is the father and natural guardian of his said child, and that said horse 'Shield' was not derived to said Pansy from her said father Thomas A. Sherwood, nor from her mother, and that the said Thomas A. Sherwood, natural guardian as aforesaid, had not and has not given security as guardian and curator of said minor, as other guardians and curators are in such cases by law required to do, then, in such event, the plaintiff is not entitled to recover of the defendant Fox the possession of said horse, and the issues must be found in favor of said defendant Fox."

The plaintiff asked the court to give the following instructions, which the court declined to do:

"1. That a natural guardian, such as the evidence shows the plaintiff to be, who has not given bond as required by law, and from whom the property has not been derived, who makes a contract in writing whereby he transfers the minor's property to a party, conditioned that if the conditions be not performed, that such contract shall be void and a forfeiture of all rights acquired thereunder shall occur, then, in case of non-performance of such conditions, the natural guardian may maintain replevin for such property, and the party who has received it is estopped to deny title in his grantor as aforesaid, and is estopped also to set up in a third person title or right to the possession of said property.

"2. That said contract was a special and conditional one, creating a personal trust and confidence in said Neal, and that he had no right, power or authority whatever to delegate that personal confidence and trust thus created to defendant Fox, and the act of said Neal in transferring the control of said property to said Fox, as shown by the evidence, violated the terms and conditions of said contract, and rendered the same void and of no effect."

Other instructions were asked and given, but the foregoing are sufficient for a proper understanding of the question we propose to discuss.

In the opinion of the trial judge, the plaintiff could not maintain the action against Neal for the recovery of the horse, because the horse did not come to Pansy Sherwood through her father or mother, and the action could not prevail against Fox for the additional reason that, at the date of the institution of the suit, he had a special lien on the horse for the board bill.

The plaintiff insists that the defendant's instruction is wrong, and that he, as the natural guardian of

his minor child, had a *special property* in the horse, and that under the statute ( Revised Statutes, 1879, section 2560) he was entitled to the custody of the animal as against a stranger, whether he had given a bond or not. Section 2560 reads as follows : "In all cases not otherwise provided by law, the father while living, and after his death, or when there shall be no lawful father, then the mother, if living, shall be the natural guardian and curator of their children, and have the custody and care of their persons, education and estates ; and when such estate is not derived from the parent acting as guardian and curator, such parent shall give security, and account as other guardians and curators ; and if such parent refuse or neglect to give such bond, the probate court shall appoint some competent person as curator, to take charge of and manage such property."

The identical question, raised by the plaintiff's objection, was passed on by the supreme court in the case of *McCarty v. Rountree*, 19 Mo. 345, and, as that case is controlling authority for this court, the objection made will have to be ruled against the plaintiff. The reasoning adopted by the court in the case cited was to the effect that the common law only gave the natural guardian of a minor the control of his ward's person, and that all control lawfully exercised by such a guardian over the estate of his ward must of necessity be authorized by statutory enactment. The court, in construing the above-quoted section, ruled that the first part of the section, which by general words gave the natural guardian the custody of his ward's estate, was qualified by the latter portion of the section, which confined this right of custody to property derived from the natural guardian, unless the natural guardian should qualify as other guardians. In the more recent case of *Morris v. Railroad*, 58 Mo. 78, it was decided that the father of a minor child could not recover damages for the killing of stock belonging to the child. It must logically

follow from the interpretation thus given to this section of the law that the natural guardian of a minor has no control whatever over the property of his ward, derived from any person other than himself, unless such guardian has qualified in the manner pointed out by the statute; hence, until the guardian so qualifies, he could not ordinarily maintain a suit for the possession of such property.

But it has been earnestly argued by the plaintiff's counsel that, even though the law be as stated by us, yet the defendants cannot defeat the plaintiff's recovery in this action by showing that the horse belonged to plaintiff's minor child. As a general rule, the defendant in a replevin suit may defeat the action by showing title in a third person, but this defense is not open to a bailee at the suit of his bailor, unless the bailee can show that he on demand had surrendered the property to the true owner. The defendant Neal received the possession of the horse under the contract with plaintiff, thereby becoming a bailee for plaintiff, and, under all of the authorities examined by us, he ought to be, and is, estopped by his contract of bailment to deny plaintiff's title to the property, or his right to maintain a suit for its possession. *Pulliam v. Burlingame*, 81 Mo. 111; *The Idaho*, 93 U. S. 575; *Bates v. Stanton*, 1 Duer. 79; Bigelow on Estoppel [5 Ed.] p. 548. The relation between bailor and bailee is analogous to that of landlord and tenant.

The plaintiff gave evidence tending to show that Neal had failed to perform his contract, which evidence remained uncontroverted by Neal, and would have authorized a finding against him. The finding in his favor was wholly unwarranted.

The only remaining question is, does Fox occupy a different and better position? We think not. It is stated in the bill of exceptions that the evidence tended to prove that Fox had knowledge of the contract between the plaintiff and Neal. This contract imposed

on Neal a personal trust in respect of the care and custody of the animal, and this duty could not be delegated to another without plaintiff's consent; therefore, the contract between Fox and Neal concerning the horse was wrongful and absolutely in violation of the terms of the agreement between Neal and the plaintiff. Fox knew that the horse belonged to the plaintiff, and that the possession of Neal was that of an agent or bailee under a special contract; hence it was his duty under the law to know the extent of Neal's authority, and whether it was broad enough to authorize the contract made by him with Neal. *Hagerman v. Sutton*, 91 Mo., *loc. cit.* 533; *Wheeler, etc., Co. v. Givan*, 65 Mo. 89; *Ayres v. Milroy*, 53 Mo. 516. Neal had no right to part with the possession of the horse, and his act in delivering it to Fox was not only unauthorized, but was actually wrongful. Fox knew this; his knowledge constituted him a wrongdoer, and this ought to, and does, destroy all idea of a lien in his favor for boarding and training the horse. *Johnson v. Hill*, 3 Starkie's Rep. 172. This would be the natural result of the present evidence, and would authorize us to order judgment here, if the facts were agreed on and not simply stated as evidence by testimony tending to show.

Upon the record now before us, we can only reverse the judgment and remand the cause with directions to the trial court to enter a judgment in favor of plaintiff for possession of the horse, if upon a retrial of the cause the facts, which plaintiff's evidence according to the present record tends to show, are established. We cannot see in any event how either Fox or Neal can establish a lien against the horse, while one who is admittedly its true owner is not before the court. The judgment in this case will, therefore, be reversed, and the cause remanded with directions to the trial court to proceed in conformity with this opinion. It is so ordered. All the judges concur.