## FRANCIS E. HOWES *vs.* DAVID H. NEWCOMB.

Hampden. September 27, 1887. — January 10, 1888.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Chattel Mortgage — Lien — Replevin.*

A lien under the Pub. Sts. c. 192, § 32, for the board of horses, is maintainable only upon proof that the board was furnished with the consent of the owner; and a mortgagee of the horses, not the mortgagor, is such an owner.

A mortgagor of horses in his possession for use in his business cannot, by keeping them at the barn of an employee, who furnishes feed for them, create a lien as against the mortgagee.

REPLEVIN of horses and other personal property. Writ dated November 6, 1886. Trial in the Superior Court, without a jury, before *Staples*, J., who allowed a bill of exceptions in substance as follows:

It appeared in evidence that one Thompson, on April 26, 1886, mortgaged certain personal property to the plaintiff, consisting of the stock, tools, and fixtures in his meat, fish, and vegetable market, in Springfield, and the two horses, one wagon, three single harnesses, and one business sleigh, described in the writ. The mortgage, which was put in evidence, described the property named in the writ as "used in connection with said business," and provided that on default the mortgagee might sell the mortgaged property, and out of the proceeds "discharge any claims or liens of third persons affecting the same." The plaintiff relied on said mortgage as entitling him to the possession of the property. It appeared that the mortgage was given to secure the payment of a promissory note, given by Thompson to the plaintiff, of even date with the mortgage, for the sum of $325 and interest, and for other purposes, as set forth therein. The note and mortgage were dated April 26, 1886, and the mortgage was duly recorded on April 27, 1886. Thompson, from the date of said mortgage to about October 12, 1886, carried on the business of buying and selling meats, fish, and vegetables, and the horses in question were used in the delivery of goods in the business.

The defendant was in the employ of Thompson in the market, as a salesman, also peddling fish, and keeping books during the whole time. The horses were kept at the defendant's barn, about one and a half miles from the market, during the whole time, and were there when the mortgage was made, although it did not appear that the plaintiff then, or afterwards, prior to Thompson's disappearance, knew where they were kept. The defendant furnished the grain and hay eaten by the horses during the whole time, and claimed that Thompson owed him therefor the sum of about $30. It appeared that the defendant and Thompson had a settlement on May 8, 1886, when the defendant was paid for keeping the horses to that date; and it is for the keeping after that date that the defendant claims a lien. Thompson absconded on or about October 12, 1886, and has never returned. Before he left, he put all the property described in the writ into the custody and care of the defendant, and directed him to notify the plaintiff of his leaving, which he did. Evidence was offered tending to show a detention of the horses by the defendant prior to November 6, 1886, the same being detained by the defendant on the ground that he had a lien thereon for the expense incurred by him in keeping them. It did not appear that the defendant had taken any steps provided in the statutes towards the enforcement of his lien, except as herein set forth.

The defendant asked the judge to rule, that he had a lien upon the horses for their keeping, as against the plaintiff's mortgage, both for the time intervening between the first interview, on October 12, 1886, and the date of plaintiff's writ, November 6, 1886, and also for the whole time he kept them for said Thompson.

The judge declined so to rule, and found for the plaintiff as respects the horses; and the defendant alleged exceptions.

*A. M. Copeland,* for the defendant.

*W. B. Stone,* for the plaintiff.

KNOWLTON, J. The horses sought to be replevied are claimed by the plaintiff under a mortgage of unquestioned validity, and by the defendant under an alleged lien for their board, founded on the Pub. Sts. c. 192, § 32. This section provides that " persons having proper charges due them for pasturing, boarding, or keeping horses or other domestic animals brought to their premises

or placed in their care by or with the consent of the owners thereof, shall have a lien on such horses or other domestic animals for such charges." It creates rights in derogation of the common law, and is to be construed strictly. *Rogers* v. *Currier*, 13 Gray, 129. To maintain a lien under it, one. must show that he has pastured, boarded, or kept the animals claimed, and that they were brought to his premises or placed in his care by or with the consent of their owner. These are matters of fact to be established by evidence.

The only exception taken was to the refusal to rule as requested, that the defendant "had a lien upon the horses for their keeping, as against the plaintiff's mortgage, both for the time intervening between the first interview, on October 12, 1886, and the date of the plaintiff's writ, November 6, 1886, and also for the whole time he kept them for said Thompson"; and the question is, whether the case shows such facts that the judge *ought to have made this ruling as a matter of law.*

The bill of exceptions does not purport to be a full report of the evidence or facts of the case. It does not even state that it presents all the facts or evidence bearing upon the legal question raised. If we assume, what in a case of this kind, in the absence of an express statement, should not ordinarily be assumed in favor of an excepting party, that we have all the facts touching the existence of the lien claimed, can there be no proper interpretation of them other than as creating a lien? The defendant was bound to prove that the horses were brought to his premises or put in his care by or with the consent of the owner. This fact is not found. *Are the others which appear in the exceptions equivalent to it in law? Is it impossible properly to draw inferences from the others inconsistent with the existence of this?*

The mortgagor was not the owner within the meaning of this statute, but the plaintiff was. It is not contended that the plaintiff expressly agreed to the horses being placed in the defendant's care. But undoubtedly an implied consent will answer the requirements of the law, and in every case of this kind the inquiry is whether such implied consent is proved. That depends, where animals are left with a mortgagor by a mortgagee, not only upon the terms of the express contract in relation to them, but also upon

all the circumstances surrounding the transaction, indicating the expectation of the mortgagee as to the management of them by the mortgagor. If from these the mortgagee may be presumed to have understood that the mortgagor would take them to a stable-keeper to be boarded, and no objection was made, such consent should be implied, otherwise it should not. It should be kept in mind that the purpose of a mortgage is to furnish security, and that the property is usually left with the mortgagor for his convenience, with an understanding that nothing shall be done or permitted by him to impair the security. An agreement which will defeat the purpose of the transaction should not be inferred or implied against a mortgagee without cogent evidence. A mortgage of horses, given to secure performance of an act in the distant future, is worthless, if the mortgagor may create a lien upon them by putting them out to be boarded. It is true that the mortgagee must know they are to be fed, and that it will cost something to feed them. But that in itself is immaterial. The real question is, whether he has reason to believe, and does believe, that they are to be boarded at a livery stable, or kept by any one else than the mortgagor.

It is doubtless true that, outside of the largest cities, a very small part of the horses or cattle in Massachusetts are boarded out by their owners. Keeping them in the personal care of the owner or of his servants, upon his own premises, or in barns where he hires privileges and furnishes his own fodder, is the rule. And one acquiring an interest in horses used in a common kind of business in the interior of the State, and leaving them with their owner, would naturally suppose, in the absence of any agreement to the contrary, that they were to be kept by him, and not taken elsewhere to be boarded. If, on the other hand, he should know at the time of taking a mortgage that the mortgagor kept his horses at a boarding stable, or that he was engaged in a business in which men generally hire their horses boarded, and he should leave them with him without directions, he would be held to consent to their being so kept.

The question before us differs from that raised in *Hammond* v. *Danielson*, 126 Mass. 294. In that case the mortgage was upon a hack, which the mortgagee left in the possession of the mortgagor to be used in his business, and the question was whether

consent was to be implied that it should be taken to a mechanic for repairs in the ordinary way, so as to become subject to a lien. The use agreed to naturally caused wear, and a consequent necessity for repairs; and inasmuch as these repairs could hardly be procured otherwise than by putting it in the shop of a mechanic, the court held that it must be deemed to have been taken there with the mortgagee's consent. Not merely the making of repairs was necessary to the preservation of it, in the use to which the mortgagee permitted it to be put, but the making of them by a person other than the mortgagor, under such circumstances as would ordinarily create a lien at the common law. The keeping of mortgaged horses is necessary to the preservation of the security, but it may be, and commonly is, done by the person who uses them in his business, and it seldom necessitates their being taken away, or put in the custody of another.

The case at bar is like *Storms* v. *Smith*, 137 Mass. 201. In that case, as in this, the effort was to establish a lien for keeping property, and the question was whether the mortgagee impliedly consented to the storage of it for pay by one to whom the mortgagor delivered it. In that case, as in this, the mortgagor might keep it in his personal charge in a building which he owned, or procured for that purpose, or he might put it into the custody of another. It was decided that the mortgagee could not be presumed to have consented to its being left by the mortgagor for storage with one who was to keep it for pay and claim a lien upon it. It is said in the opinion, "The mortgagee had given no authority other than what was to be implied from his allowing the mortgagor to remain in possession of the mortgaged goods, coupled with the fact that it was necessary that the goods should be stored somewhere to prevent their destruction. If these circumstances were enough to support the defendant's claim, every mortgagor in possession of perishable goods would have power to create a paramount lien upon them." And, referring to the record of the mortgage, it is said of the claimant, "If storage was necessary, he was chargeable with notice that the plaintiff had a right to judge for himself where it should be, if his interest was to be charged with the cost."

A charge for keeping goods is the same in kind as a charge for keeping living animals. Each is for the use of the place

occupied by the property, and for care and supervision. The only difference is, that, from the nature of the property, care and supervision of animals involves feeding them, and is on that account more costly. Perhaps this is a reason why consent to it, as a charge upon mortgaged property, should less readily be implied against a mortgagee.

In the case at bar, no fact appears bearing upon the question of implied consent of the plaintiff to the mortgagor's hiring the horses boarded, except his taking a mortgage to secure payment of a note of three hundred and twenty-five dollars upon the horses and other articles used in the business of the mortgagor as a buyer and seller of meats, fish, and vegetables, and his leaving the property in the mortgagor's possession. It did not appear that "when the mortgage was made, . . . . or afterwards prior to Thompson's disappearance, he knew where the horses were kept." And knowledge that they were kept in the defendant's barn would not, upon the facts stated, have shown that he was boarding or keeping them, within the meaning of the law. The defendant does not appear to have been engaged in the business of boarding horses. He "was in the employ of Thompson in the market as a salesman, also peddling fish, and keeping books during the whole time." The horses were kept at his "barn, about one and a half miles from the market," and he "furnished the grain and hay eaten" by them. "Thompson absconded on or about October 12, 1886," and "before he left he put all the property described in the writ into the custody and care of the defendant." We have assumed that the defendant had the horses in his "custody and care" as a keeper for hire before that date, and that he did not merely sell Thompson hay and grain and let him room in the barn. But if this was so, there is nothing to show that it was apparent at the time, and it is not clearly stated in the bill of exceptions. The provision in the power of sale authorizing the mortgagee to discharge from the proceeds "any claim or lien of a third person affecting the property" before rendering the surplus to the mortgagor, has little significance as affecting this particular claim of lien; first, because it was a general clause inserted in the mortgage to cover any state of facts that might arise; and secondly, because in this mortgage a great variety of property was conveyed, and, among

other things, wagons used in the business, which might need to be taken to a shop for repairs.

Putting upon all the facts the interpretation most favorable to the defendant, we cannot say that Thompson had the implied consent of the plaintiff to subject the horses to a lien, or that the judge should have ruled, as matter of law, that the defence was made out. If this were to be held a valid lien, it would seem to follow that every one taking a mortgage upon horses used in a business like that of a provision dealer, and leaving them with the mortgagor, must be deemed impliedly to consent to an arrangement for the destruction of his security. Such a result would be inconsistent with the liberal policy of our law in relation to mortgages of personal property.

*Exceptions overruled.*