MICHAEL SULLIVAN, PLAINTIFF IN ERROR, v. WILLIAM
CLIFTON, DEFENDANT IN ERROR.

1. The lien given by our statute to a livery stable keeper for keeping a horse left with him by the owner, is subsequent and subject to a prior recorded mortgage on the horse given by the owner.

2. It is one of the characteristics of common law liens, as distinguished from liens created by contract or statute, that the former, as a general rule, attach to the property itself, without any reference to ownership, and override all other rights in the property, while the latter are subordinate to all prior existing rights therein.

On error to the Supreme Court.

For the plaintiff in error, *Harrison H. Voorhees.*

For the defendant in error, *John W. Wartman.*

The opinion of the court was delivered by

VAN SYCKEL, J.   On the 2d of October, 1891, one Amos Wells executed to Sullivan, the plaintiff, a chattel mortgage on a horse owned by Wells.   The mortgage was immediately placed on record, the mortgagor retaining possession of the horse.

After the mortgage had been lodged for record, the mortgagor, without the knowledge of Sullivan, left the horse at the livery stable of the defendant, Clifton, to be boarded and kept.

The only question in the case is, whether the lien of the chattel mortgage is superior to the statutory lien of the livery stable keeper.

Our statute reads as follows: "That all livery stables, boarding and exchange stable keepers shall have a lien on all horses and other animals left with them in livery, for board or sale, or exchange; and also upon all carriages, wagons, sleighs and harness left with them for storage, sale or exchange, for the amount of the bill due to the proprietor of

any such stable for the board and keep of any such horse or other animal, and also for such storage; and shall have the right, without the process of law, to retain the same until the amount of such said indebtedness is discharged."

The courts of Tennessee, New Hampshire, Vermont and Massachusetts hold that the mortgagee is entitled to priority. *McGhee* v. *Edwards*, 87 *Tenn.* 507 ; *Sargent* v. *Usher*, 55 *N. H.* 287 ; *Ingolls* v. *Vance* ( *Vt.*), 18 *Atl. Rep.* 452 ; *Howes* v. *Newcomb*, 15 *N. E. Rep.* 123.

I have found but two cases holding otherwise—*Smith* v. *Stevens*, 36 *Minn.* 303 ; *Case* v. *Allen*, 21 *Kans.* 217.

In the former case the statute gave the liveryman a lien for keep of horses, at the request either of the owner or lawful possessor thereof, and provided that he might retain the animals until his charges were paid.

Under that statute no other view could reasonably be taken.

In the Kansas case, Justice Brewer, in support of his view, giving preference to the statutory liens, cites the English cases giving a lien for the repairs of vessels made at the instance of the mortgagor, priority over a previous mortgage executed by him.

This preference rests not upon statute, but upon a rule of the commercial law, which does not dominate this case.

The English courts base the superior right of one who repairs a vessel upon this ground, viz., that the mortgagee having allowed the mortgagor to continue in the apparent full ownership of the vessel, there arises an implication that the mortgagee has authorized him to make repairs which give an additional value to the vessel, and keep it in an efficient condition for service. *Williams* v. *Allsup*, 10 *C. B., N. S.*, 416.

They hold, however, that the case of an agistment does not fall within the same principle, inasmuch as the agister does not confer any additional value on the animal—he simply takes the animal to feed it. *Jackson* v. *Cummins*, 5 *Mees. & W.* 342; *Wallace* v. *Woodgate*, 1 *Car. & P.* 575.

The cases are cited and discussed by Mr. Justice Depue, in *White* v. *Smith,* 15 *Vroom* 105, and this distinction is adverted to in that case.

Hence, it was that the agister of cattle, not being within the reason of the rule upon which the lien for the repairs of vessels was based, was not entitled at common law to the like protection.

Nor is the liveryman within the reason of the rule which applies to innkeepers.

An innkeeper is bound to entertain his guest, but even he, at common law, acquires no lien on the goods which his guest brings with him, if he knows that the guest is unlawfully in possession of them.

A liveryman is not bound to receive a horse on keep. In this case he had notice of the mortgage, and could have declined to take the horse unless he was willing that his lien under the statute should be subject to the mortgage. The lien of the liveryman, as well as that of the mortgage, resting exclusively upon statutory provisions, the one having no higher claim to be enforced than the other, the lien of the former being subsequent in time and taken with full notice of the right of the latter, must upon principle be subject to it. The maxim *prior est in tempore, potior est in jure,* applies.

It is one of the characteristics of common law liens which arise, upon considerations of justice and policy, by operation of law, as distinguished from liens created by contract or statute, that the former, as a general rule, attach to the property itself without any reference to ownership, and override all other rights in the property, while the latter are subordinate to all prior existing rights therein.

In my opinion the mortgage must prevail over the contesting lien, and the judgment below should be reversed.

*For affirmance*—None.

*For reversal* — THE CHANCELLOR, CHIEF JUSTICE, DEPUE, DIXON, REED, VAN SYCKEL, BOGERT, BROWN, CLEMENT, SMITH. 10.