S. A. STONE, Appellant, v. KELLEY & SON, Respondents.

Kansas City Court of Appeals, November 5, 1894.

1. **Liverymans' Lien.** A liveryman's lien is not superior to a prior chattel mortgage.

2. **Chattel Mortgage:** CONTRACT: RECORD: LIEN. A chattel mortgage is created by contract and by the recording act on its being filed for record it becomes a lien generally against all subsequent claimants.

3. **Liveryman's Lien:** COMMON LAW: STATUTE. A liveryman's lien is not a common law lien; and the Missouri statute creating it is silent as to its priority over antedating liens. The statute measures its effect and extent; and, since it is in derogation of common law, it must be strictly construed.

4. ———: ———: PUBLIC POLICY. Public policy can not aid the claim for superiority of a liveryman's lien over a prior chattel mortgage as it is not expected, nor is it the custom for mortgagors to put out stock left with them for their convenience to be fed and cared for by others.

5. ———: ARTISAN'S LIEN: DISTINCTION. An artisan's lien is of common law origin and, if an article of property left with the mortgagor becomes out of repair or unfit for the uses for which he retains it, it is within the contemplation of the parties that it should be repaired. And it is the common understanding that for such repairs it should go to skilled artisans and the mortgagee should contemplate this when he took his security; but with live stock the custom and understanding is different.

6. ———: ———: ———. The true distinction is the different origin of the two liens with the consequences flowing therefrom, and the liveryman has not the facts on which to support an implied consent on the part of the mortgagee.

7. ———: CHATTEL MORTGAGE: PRIORITY. Section 6730, Revised Statutes, 1889, does not confer any priority on the livery stable keeper's lien over that of a prior mortgagee.

*Appeal from the Linn Circuit Court.*—HON. W. W. RUCKER, Judge.

REVERSED.

*L. A. Chapman* and *W. D. Leeper* for appellant.

(1) The court committed error in admitting any evidence for defendants, and the court committed error in giving the instruction asked for by defendants. It simply declared the law to be that an agister's or livery stable keeper's lien is superior to a prior chattel mortgage that had been executed, acknowledged and filed for record in proper county long before the agister's lien commenced. This is not the law. The weight of authority is in favor of the chattel mortgage. See leading article on the subject by D. H. Pingrey, in volume 37, page 375, number 19, Central Law Journal. *McGee v. Edwards*, 87 Tenn. 506; *Jackson v. Kassdell*, 30 Hun (N. Y.), 231; *Bissell v. Pearce,* 28 N. Y. 252; *Charles v. Neigelsen*, 15 Ill. App. 17; *Sargent v. Usher*, 55 N. H. 287; *Bank v. Lowe*, 22 Neb. 68; *Hanch v. Repley*, 127 Ind. 151; *Wright v. Sherman,*

52 N. W. Rep. (S. D.) 1093; *Easter v. Goyne*, 51 Ark. 222; *Chapman v. Bank*, 13 S. Rep. (Ala.) 764; *Sullivan v. Clifton*, 26 Atl. Rep. (N. J.) 964. (2) The court committed error in refusing the instructions asked by plaintiff. The lien of the defendants was subordinate to the lien of the plaintiff. The lien for keeping the horses can not prevail over a valid prior chattel mortgage duly recorded, and the mortgagee is not obligated to tender the amount of the claim of the livery stable keeper, before taking possession. *Reynolds v. Case*, 60 Mich. 76. To maintain his lien as superior to a prior recorded chattel mortgage, it must be shown that the horses were placed in the charge of the defendants, as livery stable keepers, with the consent of the plaintiff. *Ingalls v. Nance*, 61 Vermont, 582; *Wright v. Sherman, supra;* 37 Central Law Journal, *supra;* Jones on Liens, sec. 691; 37 Central Law Journal, 254; *Howes v. Newcomb*, 15 N. E. Rep. (Mass.) 436; Jones on Chattel Mortgages, sec. 472–474; *Sargent v. Usher*, 20 Am. Rep. 208; *White v. Smith*, 44 N. J. Law, 105; *Sherwood v. Neal*, 41 Mo. App. 416; *McCreary v. Gaines*, 55 Tex. 485; *Small v. Robinson*, 69 Maine, 425.

*E. R. Stephens* and *A. W. Mullins* for respondents.

The circuit court tried the case on the right theory and committed no error. Hayes was not only the apparent, but the real, owner of the property, subject to the mortgage incumbrance, and as such owner he was authorized under the law to contract for the boarding of the horses, and the lien the defendants secured was superior to the plaintiff's right under his mortgage. 2 R. S. 1889, sec. 6730, p. 1578; 1 Cobbey on Chattel Mortgages, sec. 466, p. 624; *Case v. Allen*, 21 Kan. 217, 7 Cent. Law Jour. 468; *Smith v. Stevens*, 36 Minn.

303, 31 N. W. Rep. 55; *Kirtley v. Morris*, 43 Mo. App. 144; Jones on Chattel Mortgages, sec. 474; Wells on Replevin, secs. 123, 124, 125, pp. 72, 73; Cobbey on Replevin, sec. 201, p. 98; *Bank v. Metcalf*, 29 Mo. App. 391.

ELLISON, J.—Plaintiff is the mortgagee of two horses. Subsequent to the execution and recording of the mortgage the mortgagor who had remained in possession placed the horses with defendant, a livery stable keeper, and failed to pay the feed bill thereby created. The defendant refusing to surrender possession to the plaintiff as mortgagee unless his feed bill was paid, plaintiff instituted this action of replevin and on trial below lost his case, the circuit court holding that the lien of the livery stable keeper was superior to the prior chattel mortgage. The correctness of this view is the question for decision. The question is a close one and has met with different answers in other states. We have not been cited to a Missouri case where the point was involved. We decided in *Kirtley v. Morris*, 43 Mo. App. 144, that an artisan had, in this state, a common law lien for repairs of chattels made at the request of the mortgagor in possession which was superior to the lien of the mortgagee under a prior mortgage. But that is not the question now before us; nor does the matter decided in *Sherwood v. Neal*, 41 Mo. App. 416, bear upon the case here.

By section 6730, Revised Statutes, 1889, it is provided that every person who shall board a horse or other domestic animal shall have a lien therefor. A chattel mortgage lien is created by the contract and its validity, as affecting third parties, depends, by force of our recording acts, upon its being deposited for record. From the date of its being filed for record it becomes a lien on the property described therein generally against

all subsequent claimants of liens. The livery keeper's lien is not a common law lien (in this respect being unlike the artisan's lien) and the statute creating it is silent as to its having priority or any superiority over liens antedating it. Being of statutory origin it should be measured by ,the statute. It is thus we look upon other liens in this state, such as that of mechanic's, landlord's etc. *Toney v. Goodley*, 57 Mo. App. 235. This statute is in derogation of the common law and according to a familiar rule should therefore be strictly construed. *Howes v. Newcomb*, 146 Mass. 79; *Ingalls v. Vance*, 61 Vert. 582.

There is no aid to the claim of superiority over the mortgage from motives of public policy or convenience. Indeed, the allowance of superiority would be attended with much inconvenience, as well as deprivation, of *bona fide* securities. Mortgages are taken to secure the payment of debts, and for the convenience of the mortgagor the possession is left with him; not that he may impair the security, but, on the contrary, any impairment of the security would be a violation either of the express or implied terms of the mortgage. When possession of animals is left with the mortgagor, it is not expected, nor is it the custom, for such mortgagors to put them out to be fed and cared for by others. If he be allowed to do this, he may easily destroy the security of the mortgagee. The following remarks of the court. in *Howes v. Newcomb, supra*, are quite pertinent here: "It is doubtless true that, outside of the largest cities, a very small part of the horses or cattle in Massachusetts are boarded out by their owners. Keeping them in the personal care of the owner, or of his servants, upon his own premises, or in barns where he hires. privileges and furnishes his own fodder, is the rule. And one acquiring an interest in horses used in a common kind of business in the interior of the state, and

leaving them with their owner, would naturally suppose, in the absence of any agreement to the contrary, that they were to be kept by him, and not taken elsewhere to be boarded."

This statute gives the same right of lien to one who trains a horse, and seems to invest the trainer with the same standing as a livery keeper or an agister. Yet it would be unreasonable to suppose that the legislature ever intended that the trainer could oust a *bona fide* prior mortgagee of his security.

Looking casually at the reasons supporting the artisan's and the liveryman's lien, they would appear to be the same; but they are not. The foundation of each is the consent of the owner, express or implied. The artisan's lien is supported on the theory that the value of the property has been enhanced by the labor and skill of the workman which has been put upon it, at least at the implied request of the owner. If an article of property left with the mortgagor becomes out of repair or unfit for the uses and purposes for which the mortgagor retains it, it may well be supposed to be within the contemplation of the parties that it will be repaired. And it has always been, and is now, well understood that people take such articles of property for repair to those who are engaged in such business, and who, from education and experience, are skilled in the business, and it is, therefore, quite a reasonable and natural implication that the mortgagee should contemplate this when he accepts his security, and that he should be held by the transaction itself to consent thereto. It is thus that the artisan rests secure in the certainty and validity of his lien. On the contrary, as we have before pointed out, it is not the general custom for owners to engage others to board their live stock. The very general custom in this country is for the owner to feed his own animals, and it, therefore,

can not be said, in the absence of evidence to the contrary, that a mortgagee will be held to have contemplated, and impliedly consented to, the hiring of board for the animals by the mortgagor.

In England (*Jackson v. Cummins*, 5 M. and W. 342), and in some cases in this country, the distinction between the two liens is made upon the idea that the agister, or boarder of animals, does not enhance their value, the owner receiving them as he placed them. But I would not like to say that this is true in point of fact, since an agister might fatten cattle for the market and thereby greatly enhance their value. It seems to me the true distinction is as I have stated, viz.: A different origin, with the consequences flowing therefrom; and that the livery keeper, or agister, has not the facts upon which to support an implied consent on the part of the mortgagee. There may, however, be such circumstances surrounding a given case which might be held to show that it was within the intention and contemplation of the parties that such board should be hired of others; for instance, as was said in *Howes v. Newcomb, supra*, if the animals at the time the mortgage was executed were being kept in a livery stable by the mortgagor.

Having in view the difference in the origin of the two liens, and the reasons upon which they are respectively grounded, I feel constrained to deny any superiority of the livery stable keeper's lien over that of a prior mortgagee. I am satisfied that the weight of authority is in favor of this result. Pingrey on Chat. Mort., sec. 730; Jones on Chat. Mort., sec. 472; Jones on Liens, sec. 691; *Hauch v. Ripley*, 127 Ind. 151; *McGee v. Edwards*, 87 Tenn. 506; *Easter v. Goyne*, 51 Ark. 222; *Charles v. Neigelsen*, 15 Ill. App. 17; *Sargent v. Usher*, 55 N. H. 287; *Reynolds v. Case*, 60 Mich. 76; *White v. Smith*, 44 N. J. Law, 105; *Ingalls*

*v. Nance*, 61 Vert. 582; *Small v. Robenson*, 69 Maine, 425; *Wright v. Shearman*, 52 N. W. Rep. (S. D.) ——; *Chapman v. Bank*, 13 S. Rep. (Ala.) 764; *Sullivan v. Clifton*, 26 Atl. Rep. 964.

The judgment, with the concurrence of the other judges, will be REVERSED.