A. G. GRABEN MOTOR COMPANY, Appellee, v. BROWN GARAGE COMPANY, Appellant.

LIENS: Storage of Automobile. The claim of a garage keeper for the
1 *storage* of an automobile does not come within the rule of the common law permitting a lien for *repairs* upon personal property.

CHATTEL MORTGAGES: Lien—Waiver. The mortgagee under a duly
2 recorded chattel mortgage on an automobile is not estopped to as-

sert his lien against the claim of a garage keeper for storage because of the fact that he allows the mortgagor to retain possession of the car and knows that the garage keeper is holding the same under the good-faith claim that he has a common-law lien thereon for such storage.

TRIAL: Conduct in General—Reading Petition to Jury. The court may well deny counsel permission to read to the jury, in argument, plaintiff's petition.

*Appeal from Des Moines Municipal Court.*—O. S. FRANKLIN, Judge.

NOVEMBER 20, 1923.

REHEARING DENIED MARCH 7, 1924.

ACTION for the replevin of an automobile. Verdict and judgment for plaintiff, and defendant appeals.—*Affirmed.*

*Theodore Mantz* and *John E. Holmes,* for appellant.

*R. R. Nesbitt* and *P. W. Walters,* for appellee.

STEVENS, J.—I. Appellee, a corporation, brings this action in replevin to recover the possession of an automobile from the defendant, a corporation engaged in the business of keeping a garage. The automobile was purchased by one Miller from appellee, and a purchase-money mortgage was given, to secure the unpaid portion of the purchase price. On or about October 1, 1921, Miller placed the car in appellant's garage for storage, at the agreed price of $10 per month. It remained in storage until this action was commenced, in August, 1922. Appellee based its right to the possession of the automobile upon its purchase-money mortgage, which had been breached by Miller; appellant defended upon the theory that it has a common-law lien which is superior to the mortgage lien of appellee. The court withdrew this issue from the jury, and submitted to it only the questions of demand and damages.

Appellant relies wholly upon a common-law lien. The

1. LIENS: storage of automobile.

business of a garage keeper is, in some respects, similar to that of a livery stable keeper in whose stable carriages are kept for hire. No lien existed at common law in favor of livery stable keepers. *McDonald & Co. v. Bennett,* 45 Iowa 456; *Smith v. O'Brien,* 46 Misc. Rep. 325 (94 N. Y. Supp. 673); *Nance v. Piano Co.,* 128 Tenn. 1 (155 S. W. 1172); *McGhee v. Edwards,* 87 Tenn. 506 (11 S. W. 316). So far, however, as the decisions in other jurisdictions have been brought to our attention, statutes creating a lien in favor of livery stable keepers have been construed as having no application to garage keepers. *Smith v. O'Brien,* supra; *Lloyd v. Kilpatrick,* 71 Misc. Rep. 19 (127 N. Y. Supp. 1096); *Automobile & Sup. Co. v. Hands, Limited,* 28 Ont. Law Rep. 585; *Webster v. Black,* 24 Manitoba 456; *Hartney v. Boulton,* (Sask.) 27 West. Law Rep. 613.

Section 3137 of the Code makes the lien of livery stable keepers subject to prior liens of record; so that, if the court were to hold that this statute is applicable to garage keepers, it would not avail appellant, as the mortgage in question was recorded prior to October 1, 1921. Appellant argues that the case comes within the rule of the common law, which permitted a lien for repairs upon personal property. Liens for repairs were allowed at common law upon the theory that an additional value was imported thereto. Preservation of automobiles by storage is quite different from value added by the skill of the artisan in making repairs thereon. Liens existed at common law in favor of innkeepers, farriers, common carriers, and warehousemen, who were bound by law to serve the public in these occupations. Appellant does not claim a lien as a warehouseman, which is now regulated by statute, but relies entirely upon an assumed common-law lien. None of the liens allowed at common law exist in favor of appellant, and the legislature of this state has not seen fit to enact legislation specifically creating a lien for storage or hire in favor of a garage keeper. If any exists in this state, it is created by Section 3137 or by some of the provisions of the statute relating to and governing the business of warehousemen.

II. It is also argued by appellant that appellee by its conduct waived its lien in favor of appellant, and is now estopped to assert same. This claim is based upon the permission granted

2. CHATTEL MORT-
GAGES: lien:
waiver.

Miller, the purchaser of the automobile, to retain possession thereof, and upon actual notice that the automobile was being held by appellant as security for storage charges, under the good-faith belief that it had a common-law lien therefor. Implied authority on the part of Miller to contract for storage is also asserted by appellant. Mere retention of possession by the mortgagor of a mortgaged chattel confers no implied authority upon such mortgagor to bind the mortgagee for contracts of this character; nor is an estoppel created by the failure of the mortgagee, with notice of an arrangement such as is shown in this case, to terminate the same by paying charges for which such mortgagee is not liable, and to promptly recover possession of the property. *Beh v. Moore,* 124 Iowa 564; *Whitlock Mach. Co. v. Holway,* 92 Me. 414; *Adler v. Godfrey,* 153 Wis. 186.

The record disclosed that a representative of appellee demanded possession of the automobile in March, 1922, and that appellant refused to permit it to be removed, without the payment of the storage charges then due. This was the only condition upon which appellant is shown to have consented to yield possession of the automobile to appellee. We shall not review the authorities cited by appellant and relied upon to sustain its contention that Miller had implied authority to bind appellee for the storage charges. The doctrine of these cases has no application to the facts of this case.

Other questions are argued by counsel, but, in view of the conclusion already reached herein, they are of minor importance. The court refused to permit counsel for appellant to read ap-

3. TRIAL: conduct
in general: read-
ing petition to
jury.

pellee's petition to the jury. The only possible purpose of counsel in desiring to read the petition to the jury was to emphasize the discrepancy between the allegation therein as to the value of the automobile and the testimony of Graben upon the trial. The ruling of the court was manifestly without prejudice. The value of the automobile, added to the damages allowed by the jury, was substantially equivalent to the balance due on the purchase price of the automobile. The evidence on the issue of value was conflicting; but Graben, as a witness for appellee, estimated the value at considerably less than the value stated in the petition.

This could have little significance in the minds of jurors in passing upon this question.

The court also refused to permit a witness for appellant to give testimony as to a conversation over the telephone, overheard by him, between Miller and someone in the office of appellee. If the ruling complained of was erroneous, it was without substantial prejudice. If the conversation could be said to bear at all upon the issue of waiver or estoppel, it was too remote to be of any probable probative value.

We find no reversible error in the record, and the judgment of the court below is, therefore,—*Affirmed.*

PRESTON, C. J., EVANS and DE GRAFF, JJ., concur.