Atlas Securities Company, Plaintiff and Appellant, v. Blaine L. Ramsay et al., Defendants. Blue Bird Air Service, Inc., Appellee.

Gen. No. 35,129.

Opinion filed October 9, 1931.

JACOB KOSBIE, for appellant.

CLARENCE H. Ross, for appellee.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

On October 25, 1930, plaintiff commenced an action in replevin against defendants in the municipal court to recover the possession of "one Parks P 1 Biplane; serial No. 1999–C 624 V." On the same day, as appears from the bailiff's return, the property was taken under the writ and delivered to plaintiff. In its statement of claim plaintiff averred that defendants wrongfully detained the biplane after demand made. Subsequently the Blue Bird Air Service, Inc., one of the defendants, appeared and filed an affidavit of merits, alleging in substance that it is a corporation engaged in Chicago in the business of furnishing storage, materials, etc., for aircraft; that on October 25, 1930, $723.55 was due to it for storage, materials, supplies and labor, theretofore furnished for said plane at the request of the authorized agent of the owner thereof; that on said date defendant "asserted a lien" on the plane for said amount, under ¶ 45, chapter 82 of Cahill's 1929 Statutes, which said lien "is superior to plaintiff's claim of lien or right of property in said plane"; and that plaintiff has no lien on or right of property in the plane, superior to defendant's, by reason of any chattel mortgage thereon, because said mortgage "is not *bona fide,* owing to the fact that the mortgagor never received title to the plane," because the provisions of the Air Commerce Regulations (issued by the secretary of commerce of the United States under section 3 of the Air Commerce Act of 1926, 49 USCA 173, regulating the transfer of title of aircraft) were not complied with. And said defendant prays that "plaintiff be ordered to pay to it $723.55, with proper costs and charges, or within three (3) days

return said plane." On December 17, 1930, there was a trial without a jury, resulting in the court finding "that the right to the possession of the property replevied is in the plaintiff, *except* that said property, when replevied, was rightfully held by defendant (Blue Bird Air Service, Inc.) for payment of a sum of money, owing to defendant and amounting to $723.55." And the court adjudged that judgment on the finding be entered, and further adjudged that "plaintiff (Atlas Securities Co.) pay to said defendant, within 20 days after this date, said sum of money, with legal interest, etc."; that, in case said payment be made within the time, "plaintiff have and retain said replevied property"; but that, in default of said payment, "defendant recover from plaintiff the possession of said property, and that a writ of *retorno habendo* issue." From the judgment plaintiff has appealed.

A correct statement of the facts in evidence on the trial, as *stipulated* by counsel for the respective parties and as certified by the trial judge, is substantially as follows:

On July 25, 1930, the Associated Aircraft, a corporation, then engaged in the business of selling aeroplanes at Chicago, sold to Blaine L. Ramsay the biplane in question, which was registered, under the U. S. Air Commerce Act, with the Department of Commerce as number "C 624 V"; that "to secure the unpaid balance of the purchase price," Ramsay, on the same day, executed and delivered to said Associated Aircraft a note, secured by his chattel mortgage of even date on said plane, in the sum of $2,085.85, payable in 12 months in stated monthly instalments; that said mortgage was duly acknowledged and recorded in the recorder's office of Cook county, Illinois, as document number B–530616, in book 28428, at page 151 (mortgage introduced in evidence); that the note and all right, title and interest in the mortgage thereafter were duly assigned by said Associated Aircraft (mortgagee) to

plaintiff; that shortly after Ramsay's purchase of the plane he brought it to the hangar of defendant (Blue Bird Air Service, Inc.) and thereafter from time to time incurred indebtedness for storage, materials, etc., furnished by defendant for said plane, which indebtedness on October 25, 1930, amounted to $723.55; that when Ramsay brought the plane to defendant's hangar, "the license card, furnished by the Department of Commerce and exhibited in the plane, showed that said plane was licensed in the name of Associated Aircraft, Inc., the mortgagee"; that defendant did not then know who owned the plane, but, by reason of the license card as so exhibited, "*assumed* that it was owned by Associated Aircraft, Inc."; and that "the chattel mortgage records in said recorder's office *were not checked* by defendant as to any chattel mortgages existing against the plane."

On October 25, 1930, Ramsay demanded of defendant the delivery of the plane to him, which demand was refused by it "*except* on payment of said $723.55", and thereupon plaintiff commenced the present action. Neither the Associated Aircraft, Inc., nor Ramsay registered the plane, *in the name of Ramsay,* with the Department of Trade and Commerce.

Defendant contended on the trial that the chattel mortgage, upon which plaintiff's right to the possession of the plane is based, "is invalid and inferior to the lien of defendant," in support of which contention defendant offered and there was received in evidence "the Air Commerce Regulations, promulgated by the Secretary of Commerce of the United States, having the force and effect of law by virtue of the Air Commerce Act of 1926, U. S. C., Title 49, Chapter 6, which provides, in section 1, as follows:"

"The Secretary of Commerce shall by regulation provide for the granting of registration to aircraft eligible for registration *if the owner requests such*

*registration.''* (Sec. 3 (a) Air Commerce Act of 1926, 49 USCA 173.)

''It shall be unlawful to navigate any aircraft in *interstate or foreign* air *commerce* unless such aircraft is registered as an aircraft of the United States.'' (Sec. 11 (a) Air Commerce Act of 1926.)

Defendant also offered in evidence sections 6, 18 and 20 of the Regulations of the Department of Trade and Commerce, as follows:

## Section 6.

''An aircraft to be entitled to license and registry must be airworthy and equipped in accordance with requirements of the Secretary of Commerce, shall not be registered under the laws of any foreign country, and shall be owned by:

(A) A citizen of the United States;

(B) A partnership of which each member is a citizen of the United States; or

(C) A corporation organized under the laws of the United States, a State, Territory, or possession of the United States, and of which the President and at least two-thirds of the Directors or managing officers are citizens of the United States, and of which at least 51 per cent of the voting interest in the corporation is controlled by citizens of the United States; or

(D) The Government of the United States, a State, Territory, or possession, or a political subdivision thereof.''

## Section 18.

''On the date of sale or transfer of title of licensed aircraft, the recorded owner *shall* report in writing to the Aeronautics Branch, Department of Commerce, Washington, D. C., giving the date and place of sale or transfer and the name and residence of the purchaser. . . . No transfer of title will be made on the records of the Department of Commerce until the forms required by these regulations, properly executed, are re-

ceived by this department. Recorded owner is the individual, partnership, company or corporation that has presented to the Aeronautics Branch, Department of Commerce, evidence of ownership acceptable for the purpose of licensing.''

Section 20.

''The aircraft license must be carried in the aircraft whenever it is in service and must be conspicuously posted where it may be readily seen by passengers and inspectors. Whenever the craft is unairworthy, and when the license is suspended or revoked, or when it is no longer in force, the license shall be surrendered to the Secretary of Commerce. The license must be presented for inspection upon the demand of any passenger, or of any authorized official or employee of the Department of Commerce or State or municipal officials charged with enforcing local regulations or laws involving Federal compliance.''

In sections 1 and 4 of ''An Act for the better protection of any person, firm or corporation expending labor, skill or materials upon, or furnishing storage for, any chattel, creating a lien upon such chattel, etc.,'' in force July 1, 1921 (Cahill's St. 1929, ch. 82, pp. 1666–7, paragraphs 45 and 48) it is provided:

''Sec. 1. Every person, firm or corporation who has expended labor, skill or materials upon any chattel, or has furnished storage for said chattel, at the request of its owner, reputed owner, or authorized agent of the owner, or lawful possessor thereof, shall have a lien upon such chattel beginning on the date of the commencement of such expenditure of labor, etc., or of such storage, for the contract price for all such expenditure of labor, etc., or for all of such storage, or in the absence of such contract price, for the reasonable worth of such expenditure of labor, etc., for a period of one year from and after the completion of such expenditure of labor, etc., notwithstanding the

fact that the possession of such chattel has been surrendered to the owner, or lawful possessor thereof.''

''Sec. 4. The lien created by this Act *shall be subject to the lien* of any *bona fide* chattel mortgage upon the same chattel recorded prior to the commencement of any lien herein created, but said lien herein created shall be in addition to, and shall not exclude, any lien now existing at common law.''

It is here contended by plaintiff's counsel that the trial court erred in entering the alternative judgment (as above stated) whereby the court in effect decided that defendant's lien under said Act to the amount of $723.55, for storage and materials furnished to said biplane, was superior to plaintiff's lien, as assignee of a prior chattel mortgage on the same chattel. Under said Act, and decisions of courts of review in this State construing said Act, and considering the stipulated facts, we are of the opinion that there is merit in the contention. (*Ehrlich v. Chapple,* 311 Ill. 467, 471, reversing 228 Ill. App. 293; *Nathan M. Stone Co. v. Ellerson,* 230 Ill. App. 593, 596.) In the *Ehrlich* case our Supreme Court said (pp. 471-2):

''The contract was made between the artisan and the mortgagor without knowledge of the mortgagee. While the artisan has a lien against the *mortgagor's* interest in the mortgaged property, yet his lien is junior to the chattel mortgage, and if he would realize any benefit from his lien it is incumbent upon him, where the mortgagor becomes in default under the terms of the mortgage, to protect his own lien by satisfying the mortgage. Nor is this in any way a hardship upon the artisan. He can at all times know, before he puts his material and time upon the chattel, whether or not it is subject to a mortgage.

''It is urged in this case that commercial necessity requires that the artisan's lien be preserved, and that where the mortgaged chattel is retained by the mort-

gagor, to be used in the course of the mortgagor's business, an artisan's lien should, in the nature of things, be considered prior to the mortgage. What constitutes commercial necessity is by no means easy of determination. . . . We know of no doctrine in the law which will countenance any necessity, commercial or otherwise, that would destroy the vested interest of a prior lien. The purpose of a mortgage is to furnish security while the mortgaged property is to be left with the mortgagor for his convenience. It is of the basis of a contract of this character that nothing should be done or permitted by the mortgagor to impair the security, other than that which arises out of ordinary wear and tear. Courts should not, therefore, indulge in the presumption that an agreement existed between the mortgagee and the mortgagor that the mortgage lien should give way to a subsequent artisan's lien, but such should be shown by clear and cogent evidence'' (citing, with other cases, *Howes v. Newcomb,* 146 Mass. 76, 79, 82; *Overland Automobile Co. v. Findley* (Tex. Civ. App.), 234 S. W. 106).

There is nothing contained in the stipulated facts in any way tending to show that, when on July 25, 1930, Ramsay purchased of the Associated Aircraft the plane in question and executed and delivered said chattel mortgage as security for the unpaid balance of the purchase price, there was any agreement express or implied between said mortgagor or mortgagee that said mortgage lien should give way to a subsequent artisan's lien. But defendant's counsel, as we understand him, contends that said mortgage was not a ''*bona fide*'' one, because of the fact that said sale or transfer of title of the plane to Ramsay was not registered with the U. S. Department of Commerce at Washington, D. C., in compliance with section 18 of the ''Air Commerce Regulations,'' above mentioned. While urging this contention counsel makes various

admissions in his printed brief in substance (a) that the ownership of the plane is in Ramsay; (b) that the failure to make registration of the sale or transfer of title of the plane to Ramsay did *not* render said sale or transfer void; and (c) that said chattel mortgage would be superior to the rights of any subsequent purchaser or lienor "who had *not* relied upon the *records* of the Department of Commerce." We find nothing in the stipulated facts showing that, when Ramsay brought the plane to defendant's hangar or during the times he subsequently incurred said indebtedness of $723.55, defendant relied upon any *records* of such department. The stipulated facts disclose that, when Ramsay brought the plane to defendant's hangar, "the license card, furnished by the Department of Commerce and exhibited in the plane, showed that said plane was licensed in the name of Associated Aircraft, Inc."; that defendant did not then know who owned the plane but, by reason of said card, *"assumed* that it was owned by Associated Aircraft, Inc."; and that the chattel mortgage records in said recorder's office *"were not checked* by defendant as to any chattel mortgage existing against the plane." Furthermore, the stipulated facts do not disclose that after the sale of the plane to Ramsay in July, 1930, he, as then owner, requested registration of the plane with the Department of Commerce, or that after said sale he navigated the plane in "interstate or foreign air commerce." Nor is it disclosed that after said sale the Associated Aircraft, Inc., as the prior "recorded owner" of the plane, did *not* make a report in writing to the Department of Commerce in compliance with the provisions of section 18 of said regulations. In view of the stipulated facts, and considering counsel's said admissions, we think it sufficiently appears that said chattel mortgage was a valid, *bona fide* one, and that plaintiff, as assignee of Associated Aircraft

(mortgagee) and by virtue of said mortgage, had such a property interest in and right to the possession of the plane as warranted it in maintaining the present replevin action.

Counsel for defendant further contends that the failure of Associated Aircraft, Inc. (the mortgagee and plaintiff's assignor of the mortgage), to perform its legal duty to register with the Department of Commerce the sale or transfer of title of the plane to Ramsay, "thereby permitting defendant to *assume* that said mortgagee was the owner of record of the plane to the detriment of defendant," *estops* said mortgagee (or plaintiff as its assignee) from asserting the lien of the mortgage. We cannot agree with the contention. When the indebtedness (on which defendant's claim for lien is based) was being contracted, defendant, by examination of the chattel mortgage records in the recorder's office of Cook county, could easily have ascertained whether or not the plane was mortgaged, but it appears that said records "were not checked", and this being so we fail to see how defendant is in any position to rely upon any such estoppel as urged. In *Vail v. Northwestern Mut. Life Ins. Co.*, 192 Ill. 567, 570, it is said: "A party claiming the benefit of an estoppel cannot shut his eyes to obvious facts, *or neglect to seek information that is easily accessible,* and then charge his ignorance to others." And in *Bondy v. Samuels*, 333 Ill. 535, 546, it is said: "The party claiming an estoppel must have relied upon material acts and representations and must have had no knowledge of, *or convenient means of knowing,* the true facts."

For the reasons indicated the alternative judgment of the municipal court, entered December 17, 1930, is reversed, and, under the stipulated facts, judgment will be entered here, as a matter of law, that on October 25, 1930, when said biplane was replevied by the bailiff

and delivered to plaintiff, plaintiff (Atlas Securities Co.) then was and is now lawfully entitled to its possession. All costs will be taxed against defendant, Blue Bird Air Service, Inc.

*Reversed and judgment here in favor of plaintiff.*

KERNER and SCANLAN, JJ., concur.