**MACK MOTOR TRUCK CORPORATION,**
Respondent,

v.

**John WOLFE, doing business as Wolfe Im-
plement Company, et al., Appellants.**

No. 29503.

St. Louis Court of Appeals.

Missouri.

June 18, 1957.

Motion for Rehearing or to be Certified to
the Supreme Court Denied
July 19, 1957.

Harry J. Mitchell, Palmyra, for appellants.

Myrl B. Sternke, Palmyra, for respondent.

SAM C. BLAIR, Special Judge.

■ Confronting us is a motion to dismiss this appeal on the ground that it fails to comply with Supreme Court Rule No. 1.08(a)(3) and (d), 42 V.A.M.S., requiring the "points relied on" to show what actions or rulings of the court are sought to be reviewed and requiring those points to state briefly and concisely why the court was wrong. We are cited to White v. Nelson, Mo.App., 283 S.W.2d 926, and Thrasher v.

Allen Estate, Mo.App., 291 S.W.2d 630. Due to the extraordinary circumstances of this case, we believe we ought not to apply this rule, whatever may be said against or for appellants' points on this appeal. Any failure of compliance here does not require us, as it would have in the White and Thrasher appeals, and the decisions they cite, to search at large through a lengthy record to determine for ourselves what might be wrong with this judgment. For, unlike the White and Thrasher appeals, the present record consists of a mere twenty one pages and a quick and easy perusal of appellants' points and this record dispels all doubt as to what actions or rulings of the trial court appellants want reviewed and why they think they were wrong. Obviously, then, the peculiar circumstances of this case do not present us with the burden the rule was adopted to relieve appellate courts from carrying, and since there is no reason for applying the rule, the motion to dismiss is overruled. This does not mean that the rule will not be enforced in other circumstances requiring its enforcement.

This is an action in replevin by Mack Motor Truck Corporation against John Wolfe, d/b/a Wolfe Implement Company, et al., for possession of a motor truck. The pleadings are not in question. The cause was submitted to the court without a jury on a stipulation of facts supplemented by undisputed evidence.

These facts are of relevance. On January 18, 1954, the Truck Corporation at Tampa, Florida, by conditional sales contract, conveyed to James H. Alvis, a Florida resident, a Mack truck. The contract secured the sum of $4,251.65 to the Truck Corporation. Subsequently, on April 14, a transfer agreement was entered between James H. Alvis, E. Crawford Jones, and the Truck Corporation, whereby Jones, a Florida resident, purchased the truck for $4,410.41 and assumed all covenants of Alvis embraced in the original contract. The original contract and the transfer agreement shortly thereafter were duly

recorded in the office of the Motor Vehicle Commission of the State of Florida and the lien created by the contract and the transfer agreement was endorsed on the certificate of title issued to Jones.

Later, on May 26, Jones took the truck to the Wolfe-Moody Implement Company at Palmyra, Missouri, where repairs requiring labor and parts were made at his instance. No claim is made that Jones notified Wolfe-Moody Implement Company of the existence of the contract and transfer agreement and none is made that the latter had any actual notice from any source. Nor is there any claim that these instruments had been recorded in Missouri as provided by Missouri law relating to conditional sales contracts. Section 428.-100, V.A.M.S.

Shortly after delivery of the truck for repairs, Wolfe-Moody Implement Company assigned all of its property to John Wolfe, d/b/a Wolfe Implement Company, et al., the present appellants. Subsequently, on July 14, Jones defaulted on the payments due under the contract and transfer agreement and reconveyed the truck to the Truck Corporation at its request.

On July 28, the Truck Corporation notified Wolfe Implement Company that it held a conditional sales contract and transfer agreement against the truck and demanded immediate possession of it. The Implement Company asserted a right to retain possession of the truck under a common-law artisan's lien for repairs and storage and refused to relinquish possession unless Jones or the Truck Corporation made full payment of its charges. The Truck Corporation filed a replevin suit, made bond, and took possession of the truck.

On these facts, the trial court ruled that the Truck Corporation's contract and transfer agreement, recorded in Florida prior to the repairs, but not in Missouri, gave rise to a lien which took precedence over the artisan's lien the Implement Company asserted against the truck. Judgment was rendered for the plaintiff, Truck Corporation, on its petition to replevy the truck and against the Implement Company on its counterclaim for judgment for the amount of repairs and storage and for the return of the truck to be held by it until full payment was made. With all of the facts conceded, the ruling of the trial court presents for our decision only the legal question of priority.

In 1890 Judge Ellison, writing for the Kansas City Court of Appeals, in Kirtley v. Morris, 43 Mo.App. 144, ruled that a Missouri artisan's common-law lien for repairs made on a chattel took precedence over a prior recorded Missouri chattel mortgage. In 1894, in Stone v. Kelley, 59 Mo.App. 214, the Kansas City Court of Appeals reaffirmed this ruling. In 1895, in Lazarus v. Moran, 64 Mo.App. 239, this court recognized the priority of a Missouri artisan's lien over a prior recorded chattel mortgage. Thereafter, the Kansas City Court of Appeals, in Birmingham v. Carr, 196 Mo.App. 411, 414, 197 S.W. 711, 712 [1–3], line 5, did the same.

"The artisan's lien is supported on the theory that the value of the property has been enhanced by the labor and skill of the workman which has been put upon it, at least at the implied request of the owner. If an article of property left with the mortgagor becomes out of repair or unfit for the uses and purposes for which the mortgagor retains it, it may well be supposed to be within the contemplation of the parties that it will be repaired. And it has always been, and is now, well understood that people take such articles of property for repair to those who are engaged in such business, and who, from education and experience, are skilled in the business, and it is, therefore, quite a reasonable and natural implication that the mortgagee should contemplate this when he accepts his security, and that he should be held by the transaction itself to consent thereto. It is thus that the artisan rests secure in the certainty and validity of his lien." Stone v. Kelley, supra, 59 Mo.App. 219.

Our research does not disclose any criticism of the Kirtley case, or other cases

cited, by any of our appellate courts. While outstate authorities are conflicting, an examination of them reveals that the Kirtley case and its prototypes are by no means unique. Blashfield, Cyclopedia of Automobile Law and Practice, Vol. 7A, Secs. 5162–5163; 61 C.J.S. Motor Vehicles § 746 b, p. 891; Idem., § 754 b, pp. 901–904; 14 C.J.S. Chattel Mortgages § 300, p. 939; 10 Am.Jur., Chattel Mortgages, § 215, p. 857; Idem., § 218, p. 859; 24 Am.Jur., Garages, Parking Stations, and Liveries, §§ 50–51, pp. 504–505; 33 Am.Jur., Liens, § 33, p. 436.

■ Nevertheless, the Truck Corporation contends that the enactment in 1915 of Sections 430.010–430.050, V.A.M.S., destroys the effect and force of these decisions. Section 430.020 provides that "every person who furnishes labor or material on any vehicle, part or equipment thereof, who shall obtain a written memorandum of the work or material furnished, or to be furnished, signed by the owner of such vehicle, part or equipment thereof, shall have a lien for the amount of such work or material as is ordered or stated in such written memorandum." Enforcement of this lien is provided for by Section 430.050. Section 430.040 provides that "such lien shall not take precedence over or be superior to any prior lien on said property, created by any chattel mortgage on the same, duly filed or recorded in accordance with the laws of this state, without the written consent of the mortgagee or the legal holder of said chattel mortgage." We cannot agree with this contention.

■ These statutes did not abrogate the artisan's common-law lien for repairs. Except for the contrary ruling in Butterworth v. Soltz, 199 Mo.App. 507, 204 S.W. 50, subsequently repudiated in McCluskey v. De Long, 239 Mo.App. 1026, 198 S.W.2d 673, our three courts of appeals have unanimously held, and still do, that the enactment of Sections 430.010–430.050, V.A.M.S., creating the statutory lien, did not destroy or affect the Missouri artisan's common-law lien. It still exists in full force, with all of its original attributes. Bostic v. Workman, 224 Mo.App. 645, 31 S.W.2d 218; State ex rel. Rueseler Motor Co. v. Klaus, Mo.App., 281 S.W.2d 543. The Supreme Court acknowledges the existence of this lien. Hughes v. Aetna Ins. Co., Mo., 261 S.W.2d 942. Therefore, the Implement Company's artisan's lien for repairs exists, notwithstanding the failure to obtain a written memorandum signed by the owner of the truck. Furthermore, the statute, Section 430.040, contains no reference to priority except its provision that the lien it creates shall not take precedence over the lien of a chattel mortgage (and, by analogy, a conditional sales contract) *"duly filed or recorded in accordance with the laws of this state, without the written consent of the mortgagee or the legal holder of said chattel mortgage."*

We are not required to decide whether the Kirtley, Stone, Lazarus, and Birmingham cases remain in such force and effect, despite Sections 430.010–430.050, V.A.M.S., creating the statutory lien, that an artisan's common-law lien for repairs is still to be granted priority over a chattel mortgage "duly filed or recorded in accordance with the laws of this state." We deal here with a Florida conditional sales contract, never filed or recorded in this state. The meaning of those decisions was that an artisan's common-law lien took priority over all earlier mortgages recorded in this state, or elsewhere, and by analogy, over all conditional sales contracts occupying the same status. The only limitation on priority of the statutory lien was that it should not take precedence over a chattel mortgage and, by analogy, a conditional sales contract, "duly filed or recorded in accordance with the laws of *this* state." This is the extent to which the General Assembly chose to go. It went no further.

■ The General Assembly must be presumed to have been aware of the state of the common law relating to the priority

of a Missouri artisan's common-law lien over all recorded Missouri chattel mortgages, as declared by the Kirtley case and others, when it enacted Sections 430.010–430.050, V.A.M.S., creating the statutory lien. For when a court of last resort has declared the law, the General Assembly is presumed to be aware of that declaration when it adopts an enactment on the same subject. Jacoby v. Missouri Valley Drainage Dist. of Holt County, 349 Mo. 818, 163 S.W.2d 930; 26 Mo.Dig., Statutes, ▮▮▮▮ Courts of appeals are courts of last resort. State ex rel. Missouri Gas & Electric Service Co. v. Trimble, 307 Mo. 536, 271 S.W. 43; State ex rel. American Car & Foundry Co. v. Daues, 313 Mo. 681, 282 S.W. 389, quashing certiorari, Cobb v. American Car & Foundry Co., Mo.App., 270 S.W. 398; State ex rel. Hoyt v. Shain, 338 Mo. 1208, 93 S.W.2d 992, quashing opinion in part in Lampton Realty Co. v. Hoyt, 80 S.W.2d 249, conformed to 231 Mo.App. 143, 99 S.W.2d 145; 8 Mo.Dig., Courts, ▮▮▮▮ Accordingly, when the General Assembly created the statutory lien, it must have known that the declared common law of this state then gave precedence to a Missouri artisan's lien over all recorded mortgage liens, and, by analogy, over all conditional sales contracts. 26 Mo.Dig., Statutes, ▮▮▮▮ Statutes in derogation of the common law, as are Sections 430.010–430.050, V.A.M.S., must be strictly construed against derogating the common law. 26 Mo.Dig., Statutes, ▮▮▮▮ The General Assembly elected to provide *only* that mortgages duly filed, *in conformity with Missouri law,* should take precedence over an artisan's lien. Undeniably, it had the opportunity, and the right, and, presumptively, the essential background knowledge, to provide, if it chose, that outstate mortgages and conditional sales contracts, recorded in a foreign state, but not in this state, should take precedence over a Missouri artisan's common-law lien for repairs. It did not do so. Since it did not do so, it ought to be assumed that it advisedly chose not to do so. Blashfield, Cyclopedia of Au-

tomobile Law and Practice, Vol. 7A, § 5164, p. 725. Elsewhere it has been ruled that where a statute provides that "a garage keeper's lien shall not be superior to rights under a prior conditional sales contract or chattel mortgage, properly recorded, it is, nevertheless, superior to a prior mortgage recorded only in another state." Blashfield, Cyclopedia of Automobile Law and Practice, Vol. 7A, § 5169, p. 732; 61 C.J.S. Motor Vehicles § 754, pp. 903–904.

The Truck Corporation advances decisions ruling that an outstate conditional sales contract or chattel mortgage, duly recorded in accordance with the laws of the foreign state, although not recorded in this state, takes priority over the rights of innocent purchasers in this state. Jerome P. Parker-Harris Co. v. Stephens, 205 Mo.App. 373, 224 S.W. 1036; Associates Inv. Co. v. Froelich, Mo.App., 34 S.W.2d 987. It cites a decision ruling that an Oklahoma mortgage, duly recorded in that state, supersedes the rights of a Missouri citizen seeking to attach the mortgaged chattel to obtain payment for personal injuries negligently caused by the mortgagor. Yellow Mfg. Acceptance Corp. v. Rogers, 235 Mo.App. 96, 142 S.W.2d 888. Cited also is Metzger v. Columbia Terminals Co., 227 Mo.App. 135, 50 S.W.2d 680. In the Metzger case, a Missouri chattel mortgage was given on a motor vehicle which the mortgagor, without the consent of the mortgagee, transported to Pennsylvania and then shipped back to the mortgagee via railroad carrier without prepaying the freight. The question was whether the lien of the carrier for its freight charges superseded that of the mortgagee. The ruling was that it did not.

We believe that none of these cases is in point. In each there was a total absence of any circumstance or fact authorizing any inference of *implied consent* of the mortgagee to the sale of the chattel to an innocent purchaser, or that the chattel should stand good for the tort of the mort-

gagor, or that the mortgagor should have a right to subject the chattel to a carrier's lien for freight. The reasons said to authorize the priority of an artisan's common-law lien over a chattel mortgage in the Kirtley, Stone, Lazarus, and Birmingham cases simply do not exist in the cases the Truck Corporation cites.

Similar to the reasoning which denies the relevance of the decisions just discussed is that which applies in agisters' lien cases for the keeping and feeding of livestock. Such a lien is inferior to a prior recorded chattel mortgage because there is no ground upon which to assume *implied consent* by the mortgagee that the mortgagor shall deliver the livestock to others for keep and feeding. On the contrary, the implication always has been that the mortgagor shall himself care for and feed the livestock and not commit these chores to others. Stone v. Kelley, supra, 59 Mo.App. 214; Lazarus v. Moran, supra, 64 Mo.App. 239; Harding v. Kelso, 91 Mo.App. 607; Baskin & Edmondston v. Wayne, 62 Mo.App. 515.

■ We hold that the Implement Company is entitled to an artisan's common-law lien on the truck for the repairs made at the instance of E. Crawford Jones, the conditional vendee. The parties agreed in the trial court, and agree here, that the reasonable value of those repairs was $404.87, and the lien will be for that amount.

■ Our ruling so far has dealt only with an artisan's common-law lien for repairs on a chattel. Whether the Implement Company has a common-law lien on the truck for storage presents a different question. This is the only lien for storage asserted by the Implement Company and the only one the parties argue in their briefs. One of our courts of appeals has stated *obiter* that no such lien exists at common law. Bostic v. Workman, supra, 31 S.W.2d 218. The precise question has not been ruled by our courts. On the other hand, the great weight of authority is that no lien for storage exists at common law.

Rickenberg v. Capitol Garage, 68 Utah 30, 249 P. 121, 50 A.L.R. 1303; West Allis Industrial Loan Co. v. Stark, 197 Wis. 363, 222 N.W. 310, 62 A.L.R. 1483; Crosby v. Hill, 121 Me. 432, 117 A. 585; Williams v. International Harvester Co., 172 Or. 270, 141 P.2d 837; A. G. Graben Motor Co. v. Brown Garage Co., 197 Iowa 453, 195 N.W. 752, 31 A.L.R. 832; United Tire & Inv. Co. v. Maxwell, 202 Okl. 476, 215 P.2d 541; Lewis v. Gray, 109 Me. 128, 83 A. 1, 39 L.R.A.,N.S., 1164, Ann.Cas. 1913D, 1298; Bost v. Larsen Bros., Inc., 103 Utah 142, 134 P.2d 179; Clarksburg Casket Co. v. Valley Undertaking Co., 81 W.Va. 212, 94 S.E. 549, 3 A.L.R. 660; Blashfield, Cyclopedia of Automobile Law and Practice, Vol. 7A, § 5097; 61 C.J.S. Motor Vehicles § 748 d, p. 898; 24 Am.Jur. Garages, Parking Stations and Liveries, § 55, p. 607; 38 C.J., Livery Stable and Garage Keepers, § 22c, p. 79, notes 10, 11, 54 C.J.S. Livery Stable Keepers § 7. It is true that some authorities hold that an artisan has a common-law lien for storage on the theory that he is a warehouseman. Our statutes and decisions define warehousemen and warehouses. Ch. 415, 21 V.A.M.S.; 28 Mo.Dig., Warehousemen, ■ Nothing is present in this record to persuade that the Implement Company is a warehouseman or operates a warehouse in the true sense of those terms. A. G. Graben Motor Co. v. Brown Garage Co., supra; Lewis v. Best-By-Test Garage, 200 Iowa 1051, 205 N.W. 983. It does not claim to be a warehouseman or to operate a warehouse, or that any lien was created on that theory. Quite the contrary, its pleadings admit that it operates "a retail implement and garage and motor vehicle repair business." This is no warehouse. Actually, on this branch of the case it cites no authority at all and simply assumes that it has a common-law lien for storage on some theory or other. In view of the great weight of authority, and because we discern no reason for applying the warehouse theory, we conclude that the Implement Company has no common-law lien for storage.

For these reasons, the judgment of the trial court awarding the plaintiff, Mack Motor Truck Corporation, the relief it prayed for in its petition, in so far as that judgment denies the defendants a lien for the repairs on the truck, is reversed. Our judgment is against the plaintiff, Mack Motor Truck Corporation, on its petition, and for the defendants, John Wolfe, doing business as Wolfe Implement Company, et al., on their counterclaim, in the sum of $404.87, the agreed value of the repairs made, or for the return of the truck by the Mack Motor Truck Corporation to the defendants, John Wolfe, doing business as Wolfe Implement Company, et al., until this amount is paid, according to the option of the defendants. Mc-Cluskey v. De Long, supra, 198 S.W.2d 677 [12].

The trial court is directed to enter our judgment.

ANDERSON, Acting P. J., and MAT-THES J., concur.